**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| VB Assets, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Roku, Inc.,<br><br>Defendant. | C.A. No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff VB Assets, LLC ("Plaintiff" or "VoiceBox") brings this Complaint against defendant Roku, Inc. ("Defendant" or "Roku") and alleges, on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

## NATURE OF THE CASE

1. This is an action for patent infringement under title 35 of the United States Code.

2. VoiceBox, through its predecessor companies VoiceBox Technologies Corporation and VoiceBox Technologies, Inc. (collectively "VoiceBox Technologies"), pioneered voice-based natural language understanding and Artificial Intelligence ("AI") technology. In recognition of their many innovations, the U.S. Patent & Trademark Office awarded and issued the following United States Patents (collectively "the VoiceBox Patents"):

| Family | U.S. Patent No. |
|---|---|
| Cooperative Conversations | 8,073,681 ("the '681 patent")<br>8,515,765 ("the '765 patent")<br>10,297,249 ("the '249 patent")<br>10,510,341 ("the '341 patent")<br>10,755,699 ("the '699 patent") |
| Voice Ads | 7,818,176 ("the '176 patent")<br>8,527,274 ("the '274 patent")<br>8,886,536 ("the '536 patent") |

| Family | U.S. Patent No. |
|---|---|
| | 9,269,097 (“the ‘097 patent”)<br>11,080,758 (“the ‘758 patent”)<br>12,236,456 (“the ‘456 patent”) |
| Voice Commerce | 9,626,703 (“the ‘703 patent”)<br>11,087,385 (“the ‘385 patent”) |

3. The innovations in the VoiceBox Patents are fundamental to the development of voice-based AI systems.

4. As set forth in more detail below, Roku is and has been infringing certain of the VoiceBox Patents, i.e., the ‘681 patent, ‘341 patent, ‘699 patent, ‘176 patent, ‘097 patent, ‘758 patent, and ‘385 patent (“Asserted VoiceBox Patents”) and continues to do so through the present date. Such infringement includes Roku—on its own, by conduct attributable to Roku, by conduct for which Roku is legally responsible, or a combination of the foregoing—performing every step of the patented methods in the Asserted VoiceBox Patents. Such infringement also includes inducing others to perform every step of the patented methods and contributing to others’ performance of the same. Roku’s infringement is based on the use of the voice-based functionalities of the instrumentalities listed below (“Roku AI Products”):

a. Roku Voice Remote;

b. Roku Voice Remote Pro;

c. Roku Mobile App; and

d. Any instrumentalities, including hardware and software that enable a user to interact with, and use, Roku voice-enabled features identified in the claim charts attached as exhibits to this Complaint that may not otherwise be listed above.[1]

5. The voice-based, natural language understanding and AI functionality within

[1] VoiceBox reserves the right to expand upon or otherwise modify the above list during this case and is in no way limiting the scope of the accused instrumentalities to what is currently listed.

the Roku AI Products that is accused of infringement (the "AI Functionality") constitutes a separate and distinct accused feature of Roku's larger products and platforms. The AI Functionality—including Roku Voice and Roku Voice Remote—is implemented through specialized software components, including speech recognition engines, conversational language processors, natural language understanding models, and associated AI inference code (collectively, the "Specialized AI Software"). The Specialized AI Software is architecturally and functionally separable from other, unaccused, features and functions of Roku's hardware devices, operating systems, and application software that do not practice the patented methods of the VoiceBox Patents. On information and belief, the Specialized AI Software exists as discrete modules, libraries, APIs, and services that Roku develops, maintains, distributes, and updates separately from the unaccused aspects of its products. The Specialized AI Software is a component of, and constitutes a material part of, the patented inventions. When the AI Functionality is enabled or activated by a user—for example, by pressing a microphone button, issuing a "Hey Roku", pressing the Roku Voice button on the remote or the microphone button in the Roku App, or otherwise invoking Roku voice interface—the Specialized AI Software performs the patented methods recited in the VoiceBox Patents. Any user's ability to disable, deactivate, or refrain from using the AI Functionality does not provide the Specialized AI Software with substantial non-infringing uses; rather, it is simply unaccused functionality.

6. VoiceBox has brought this case to hold Roku accountable for its willful infringement of VoiceBox's patent rights. VoiceBox seeks all available relief under the patent laws of the United States, 35 U.S.C. § 100 et seq., and any other applicable laws for infringement of the Asserted VoiceBox Patents.

## THE PARTIES

7. VB Assets, LLC is a limited liability company organized under the laws of Delaware and has its principal place of business at 14725 NE 20th St Ste D PMB 202, Bellevue, WA 98007-3732.

8. Defendant Roku, Inc. is a Delaware corporation with its headquarters at 1173 Coleman Avenue, San Jose, CA 95110. On information and belief, Roku, Inc. is responsible for making, using, offering for sale, and/or importing Roku AI Products as well as responsible for providing advertisements in response to voice queries. Roku, Inc. has a registered agent at 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

9. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 100, et seq., including 35 U.S.C. § 271.

10. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States.

11. Personal jurisdiction over Roku is proper in this District based on one or more of the following: its presence in this judicial district; it has availed itself of the rights and benefits of the laws of Delaware; or it has derived substantial revenue from sales of Roku AI Products in Delaware and it has systematic and continuous business contacts with Delaware. Roku was incorporated in Delaware and Roku designs Roku AI Products, which are advertised, offered for sale, sold, and used in Delaware.

12. Venue is proper in this district under 28 U.S.C. § 1400(b). Roku is incorporated

in Delaware and therefore resides within this District.

## BACKGROUND

### A. VoiceBox Technologies Invents Groundbreaking Voice Technology

13. In 2001, three brothers, Mike, Rich, and Bob Kennewick, founded VoiceBox Technologies to bring natural language understanding ("NLU") to a wide array of computer applications. They recognized that the typical computer speech-recognition systems forced human operators to adhere to a limited number of rigid speech prompts. These rigid prompts limited how systems were used and inhibited the widespread adoption of speech-recognition systems. The brothers believed that VoiceBox Technologies could become the first company to enable people to naturally and effectively interact with computer speech systems.

14. From its inception, VoiceBox Technologies engaged in intense research efforts to develop its NLU technology. As part of these efforts, VoiceBox Technologies achieved a significant milestone when it developed an early prototype called "Cybermind." As demonstrated on the KING 5 news, Cybermind was a voice-controlled speaker that could provide weather, recipes, sports scores, calendar updates, or play a song.[2]







[2] https://www.youtube.com/watch?v=DDcRyPnvWhw

**Figure 1: Cybermind Prototype**

15. VoiceBox Technologies' groundbreaking work did not go unrecognized. After learning about VoiceBox Technologies' innovations, Toyota hired it to build a sophisticated NLU speech interface for its Lexus automobiles. VoiceBox Technologies built the voice and NLU capability for Toyota's award-winning Entune multimedia system.

16. As part of the development effort of an NLU interface for Lexus, VoiceBox Technologies demonstrated a personal assistant called "Alexus" that showcased the power of its Conversational Voice technology.




**Figure 2: "Alexus" Demonstration**

17. Throughout its research and development efforts, VoiceBox Technologies realized that its technology could be deployed in a wide range of applications from connected home to mobile personal assistants.




**Figure 3: Connected Home**




**Figure 4: Mobile**

18. By January 2012, VoiceBox Technologies was a leader in NLU and conversational voice technology. Leading companies and brands throughout the world, including Toyota, Lexus, TomTom, Pioneer, Chrysler, Dodge, and Magellan used VoiceBox Technologies' award-winning and patented contextual speech technology. VoiceBox Technologies had software applications that ran on smart speakers, in-car systems, smartphones, smart TVs, computers, tablets, e-readers, and personal navigation devices.

19. In 2013, the Institute of Electrical and Electronics Engineers (IEEE) ranked VoiceBox Technologies number 13 in patent power for the computer software industry.

Computer Software

| Rank | Company / Organization | Country of Headquarters | 2012 U.S. Patents | Pipeline Growth Index | Pipeline Impact | Self-Citations (%) | Adjusted Pipeline Impact | Pipeline Generality | Pipeline Originality | Pipeline Power |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Microsoft Corp. | United States | 2665 | 1.14 | 1.07 | 0.22 | 1.07 | 1.19 | 1.01 | 3909.67 |
| 2 | VMware Inc. | United States | 106 | 1.89 | 3.07 | 0.16 | 3.07 | 3.02 | 1.06 | 1966.63 |
| 3 | Citrix Systems Inc. | United States | 112 | 1.56 | 2.83 | 0.27 | 2.83 | 2.62 | 1.12 | 1441.86 |
| 4 | Symantec Corp. | United States | 379 | 1.34 | 1.54 | 0.16 | 1.54 | 1.63 | 1.01 | 1297.47 |
| 5 | Digimarc Corp. | United States | 94 | 0.9 | 5 | 0.88 | 2.08 | 4.8 | 1.12 | 944.96 |
| 6 | Oracle Corp. | United States | 913 | 0.92 | 1 | 0.12 | 1 | 1.13 | 0.98 | 930.36 |
| 7 | CommVault Systems Inc. | United States | 52 | 1.3 | 5 | 0.88 | 2.1 | 5 | 1.22 | 866.39 |
| 8 | Cadence Design Systems Inc. | United States | 158 | 1.15 | 2.45 | 0.15 | 2.45 | 1.76 | 0.89 | 699.87 |
| 9 | Adobe Systems Inc. | United States | 332 | 1.13 | 1.14 | 0.18 | 1.14 | 1.24 | 1 | 526.88 |
| 10 | Rovi Corp. | United States | 97 | 1.47 | 1.85 | 0.25 | 1.85 | 1.91 | 1.02 | 514.34 |
| 11 | TeleCommunication Systems Inc. | United States | 57 | 1.36 | 2.35 | 0.42 | 2.06 | 2.52 | 1.12 | 451.72 |
| 12 | SAP AG | Germany | 601 | 1.1 | 0.74 | 0.23 | 0.74 | 0.85 | 1.02 | 424.91 |
| **13** | **Voicebox Technologies Inc.** | **United States** | **11** | **1.83** | **5** | **0.65** | **3.26** | **5** | **1.29** | **423.56** |
| 14 | Sony Computer Entertainment Inc. | Japan | 220 | 1.33 | 1.1 | 0.36 | 1.03 | 1.26 | 1.08 | 409.7 |
| 15 | Bally Technologies Inc. | United States | 98 | 1.78 | 1.46 | 0.38 | 1.35 | 1.83 | 0.9 | 388.27 |
| 16 | Smith Micro Software Inc. | United States | 18 | 3 | 2.8 | 0.17 | 2.8 | 2.41 | 0.97 | 353.44 |
| 17 | McAfee Inc. | United States | 84 | 1.33 | 2.02 | 0.39 | 1.85 | 1.61 | 1.04 | 347.02 |
| 18 | Nuance Communications Inc. | United States | 160 | 1.15 | 1.19 | 0.3 | 1.19 | 1.56 | 1.02 | 345.99 |
| 19 | Synopsys Inc. | United States | 148 | 0.95 | 1.61 | 0.08 | 1.61 | 1.17 | 1.06 | 280.46 |
| 20 | Infosys Ltd. | India | 29 | 1.93 | 2.52 | 0.04 | 2.52 | 1.75 | 1.02 | 253.69 |

Source: IEEE Spectrum Patent Power 2013

20. VoiceBox Technologies had become a leader in conversational Artificial Intelligence, including Voice Recognition, NLU, and AI services.[3]

21. As illustrated in the following company photograph, VoiceBox Technologies had invested in a large team of engineers, scientists, linguists, and other personnel—and was, at that time, optimistic about its technology and its future.

[3] *See* https://www.databricks.com/company/newsroom/press-releases/voicebox-accelerates-voice-recognition-innovations-with-databricks-unified-analytics-platform



**B. The Asserted VoiceBox Patents**

22. The '681 patent, entitled "SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE," was duly and legally issued on December 6, 2011, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors. Under 35 U.S.C. § 282, the '681 patent is presumed valid. A true and correct copy of the '681 patent is attached hereto as **Exhibit A**.

23. The '681 patent claims, among other things, a method for providing a cooperative conversational voice user interface, comprising: receiving an utterance at a voice input device during a current conversation with a user, wherein the utterance includes one or more words that have different meanings in different contexts; accumulating short-term shared knowledge about the current conversation, wherein the short-term shared knowledge includes knowledge about the utterance received during the current conversation; accumulating long-term shared knowledge about the user, wherein the long-term shared knowledge includes knowledge about one or more past conversations with the user; determining an intended meaning for the utterance, wherein determining the intended meaning for the utterance includes: identifying, at a conversational speech engine, a context associated with the utterance from the short-term shared knowledge and the long-term shared knowledge; and establishing the intended meaning within the identified context, wherein the conversational speech engine

establishes the intended meaning within the identified context to disambiguate an intent that the user had in speaking the one or more words that have the different meanings in the different contexts; and generating a response to the utterance, wherein the conversational speech engine grammatically or syntactically adapts the response based on the intended meaning established within the identified context (claim 1).

24. VoiceBox is the assignee of the entire right, title, and interest in the ‘681 patent.

25. The ‘341 patent, entitled “SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE,” was duly and legally issued on December 17, 2019, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors. Under 35 U.S.C. § 282, the ‘341 patent is presumed valid. A true and correct copy of the ‘341 patent is attached hereto as **Exhibit B**.

26. The ‘341 patent claims, among other things, a computer-implemented method of facilitating natural language system responses utilizing accumulated short-term and long-term knowledge, the method being implemented by a computer system that includes one or more physical processors executing one or more computer program instructions which, when executed, perform the method, the method comprising: accumulating, by the computer system, short-term knowledge based on one or more natural language utterances received during a predetermined time period; expiring, by the computer system, one or more items of short-term knowledge that are based on one or more natural language utterances received prior to the predetermined time period; accumulating, by the computer system, long-term knowledge based on one or more natural language utterances received prior to the predetermined time period, wherein the long-term knowledge includes at least one of the one or more expired items of short-term knowledge; receiving, at the computer system, a first natural language utterance via

an input device; determining, by the computer system, based on the short-term knowledge and the long-term knowledge, a first context for the first natural language utterance; determining, by the computer system, based on the first context, an interpretation of the first natural language utterance; and generating, by the computer system, a first response to the first natural language utterance based on the interpretation (claim 1).

27. VoiceBox is the assignee of the entire right, title, and interest in the '341 patent.

28. The '699 patent, entitled "SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE," was duly and legally issued on August 25, 2020, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors. Under 35 U.S.C. § 282, the '699 patent is presumed valid. A true and correct copy of the '699 patent is attached hereto as **Exhibit C**.

29. The '699 patent claims, among other things, a computer-implemented method of generating natural language system responses adapted based on a user's manner of speaking, the method being implemented by a computer system that includes one or more physical processors executing one or more computer program instructions which, when executed, perform the method, the method comprising: receiving, by the computer system, a user input comprising a natural language utterance; recognizing, by the computer system, one or more words or phrases from the natural language utterance; identifying, by the computer system, a context for the natural language utterance based on the one or more words or phrases recognized from the natural language utterance; determining, by the computer system, an interpretation of the natural language utterance based on the identified context; accumulating, by the computer system, short-term knowledge based on one or more natural language utterances received during a predetermined time period, wherein the one or more natural

language utterances received during the predetermined time period are related to a single conversation between a user and the computer system; accumulating, by the computer system, long-term knowledge, wherein the long-term knowledge is accumulated based on one or more natural language utterances received prior to the predetermined time period; identifying, by the computer system, a manner in which the natural language utterance was spoken based on the short-term knowledge and the long-term knowledge; and generating, by the computer system, a response to the natural language utterance based on the interpretation and the identified manner in which the natural language utterance was spoken (claim 1).

30. VoiceBox is the assignee of the entire right, title, and interest in the '699 patent.

31. The '176 patent, entitled "SYSTEM AND METHOD FOR SELECTING AND PRESENTING ADVERTISEMENTS BASED ON NATURAL LANGUAGE PROCESSING OF VOICE-BASED INPUT," was duly and legally issued on October 19, 2010, and names Tom Freeman and Mike Kennewick as the inventors. Under 35 U.S.C. § 282, the '176 patent is presumed valid. A true and correct copy of the '176 patent is attached hereto as **Exhibit D**.

32. The '176 patent claims, among other things, a method for selecting and presenting advertisements in response to processing natural language utterances, comprising: receiving a natural language utterance containing at least one request at an input device; recognizing one or more words or phrases in the natural language utterance at a speech recognition engine coupled to the input device, wherein recognizing the words or phrases in the natural language utterance includes: mapping a stream of phonemes contained in the natural language utterance to one or more syllables that are phonemically represented in an acoustic grammar; and generating a preliminary interpretation of the natural language utterance from the one or more syllables, wherein the preliminary interpretation generated from the one or

more syllables includes the recognized words or phrases; interpreting the recognized words or phrases at a conversational language processor coupled to the speech recognition engine, wherein interpreting the recognized words or phrases includes establishing a context for the natural language utterance; selecting an advertisement in the context established for the natural language utterance; and presenting the selected advertisement via an output device coupled to the conversational language processor (claim 1).

33. VoiceBox is the assignee of the entire right, title, and interest in the '176 patent.

34. The '097 patent, entitled "SYSTEM AND METHOD FOR DELIVERING TARGETED ADVERTISEMENTS AND/OR PROVIDING NATURAL LANGUAGE PROCESSING BASED ON ADVERTISEMENTS," was duly and legally issued on February 23, 2016, and names Tom Freeman and Mike Kennewick as the inventors. Under 35 U.S.C. § 282, the '097 patent is presumed valid. A true and correct copy of the '097 patent is attached hereto as **Exhibit E**.

35. The '097 patent claims, among other things, a method for providing natural language processing based on advertisements, the method being implemented on a computer system having one or more physical processors executing computer program instruction which, when executed, perform the method, the method comprising: providing, by the computer system, an advertisement associated with a product or service for presentation to a user; receiving, at the computer system, a natural language utterance of the user; and interpreting, by the computer system, the natural language utterance based on the advertisement and, responsive to the existence of a pronoun in the natural language utterance, determining whether the pronoun refers to one or more of the product or service or a provider of the product or service (claim 1).

36. VoiceBox is the assignee of the entire right, title, and interest in the '097 patent.

37. The '758 patent, entitled "SYSTEM AND METHOD FOR DELIVERING TARGETED ADVERTISEMENTS AND/OR PROVIDING NATURAL LANGUAGE PROCESSING BASED ON ADVERTISEMENTS," was duly and legally issued on August 3, 2021, and names Tom Freeman and Mike Kennewick as the inventors. Under 35 U.S.C. § 282, the '758 patent is presumed valid. A true and correct copy of the '758 patent is attached hereto as **Exhibit F**.

38. The '758 patent claims, among other things, a method for processing natural language utterances that include requests and selecting and presenting purchase opportunities based thereon, the method being implemented by one or more physical processors programmed with computer program instructions, which when executed cause the one or more physical processors to perform the method, the method comprising: providing, by the one or more processors, a natural language utterance as an input to a speech recognition engine; receiving, by the one or more processors, words or phrases, recognized from the natural language utterance, as an output of the speech recognition engine; determining, by the one or more processors, a context for the natural language utterance based on the recognized words or phrases; selecting, by the one or more processors, a purchase opportunity based on the determined context; delivering, by the one or more processors, the selected purchase opportunity via an electronic device in communication with the one or more processors; tracking, by the one or more processors, an interaction pattern associated with the purchase opportunity delivered to the electronic device, wherein the tracked interaction pattern associated with the purchase opportunity includes information associated with a subsequent request in which the electronic device interacts with the purchase opportunity, wherein the

subsequent request in which the electronic device interacts with the purchase opportunity includes the electronic device completing a transaction related to the purchase opportunity; building or updating, by the one or more processors, a user-specific profile based on the tracked interaction pattern; and interpreting, by the one or more processors, a subsequent natural language utterance using the user-specific profile to select a subsequent purchase opportunity based on the subsequent natural language utterance (claim 1).

39. VoiceBox is the assignee of the entire right, title, and interest in the '758 patent.

40. The '385 patent, entitled "VOICE COMMERCE," was duly and legally issued on August 10, 2021, and names Michael R. Kennewick, Sr. as the inventor. Under 35 U.S.C. § 282, the '385 patent is presumed valid. A true and correct copy of the '385 patent is attached hereto as **Exhibit G**.

41. The '385 patent claims, among other things, a method for providing voice commerce, the method being implemented on a computer system having one or more physical processors programmed with computer program instructions which, when executed, perform the method, the method comprising: receiving, by the computer system, a single first user input comprising a natural language utterance; providing, by the computer system, the natural language utterance as an input to a speech recognition engine; obtaining, by the computer system, one or more words or phrases recognized from the natural language utterance as an output of the speech recognition engine; searching, by the computer system, one or more databases of products or services based on the one or more words or phrases; selecting, by the computer system, without further user input other than the single first user input, a product or service from the database to be purchased based on the search; receiving, by the computer system, a second user input indicating confirmation by a user to complete a purchase

transaction of the selected product or service; and completing, by the computer system, without further user input after the receipt of the second user input, a purchase transaction of the selected product or service (claim 1).

42. VoiceBox is the assignee of the entire right, title, and interest in the '385 patent.

### C. Roku's Knowledge of VoiceBox's Patented Technology and Roku's Willful Infringement[4]

43. VoiceBox approached Roku about a potential business relationship involving VoiceBox's ASR and NLU technology beginning no later than mid-2014. On June 13, 2014, Roku provided VoiceBox Technologies with a Mutual Non-Disclosure Agreement to govern the parties' exchange of confidential technical and business information, which VoiceBox executed through its then-Chief Financial Officer. The parties thereafter engaged in a sustained business relationship spanning several years, during which Roku received repeated, explicit written notice that VoiceBox's core NLU technology was patented, and during which Roku's own personnel directly and repeatedly evaluated that technology.

44. On October 10, 2014, VoiceBox sent Roku, through Roku's VP of Strategic Sourcing Xi Gao and Roku employee Jim Funk, a written pricing proposal expressly stating that VoiceBox's offering would use VoiceBox's "own speech technology (ASR) combined with our patented natural language understanding (NLU) technology." Roku's Xi Gao responded to VoiceBox that same day confirming that Roku would review the proposal internally "with the team." That same day, VoiceBox sent Roku a second, substantially similar written pricing proposal containing the identical representation that VoiceBox's NLU technology was patented.

[4] VoiceBox in this section refers to VoiceBox's predecessor companies.

45. On December 17, 2014, VoiceBox sent Roku, again through Xi Gao, an updated written pricing proposal that repeated the same representation that the offered service would combine VoiceBox's ASR with VoiceBox's "patented natural language understanding (NLU) technology." By no later than December 17, 2014, therefore, Roku's business development personnel had received written notice, on at least three separate occasions over a period of months, that the NLU technology being offered to Roku was patented and relevant to Roku's technology.

46. Roku did not merely receive VoiceBox's written representations; Roku's own personnel undertook direct, hands-on technical evaluation of VoiceBox's technology, including its patented NLU technology. On August 1, 2014, Roku's Principal Engineer (Hardware) Greg Garner confirmed to VoiceBox that Roku wished "to proceed with evaluating your ASR engine" and requested technical access information so that a Roku-retained consultant could integrate and test VoiceBox's system directly. On December 22, 2014, Roku's Xi Gao convened a "Technical Deep Dive" meeting with VoiceBox, held on January 5, 2015 at Roku's Saratoga, California office, for the stated purpose of enabling Roku "to understand better the existing capabilities of VoiceBox and what components need to be built and/or modified" for Roku's use. That meeting involved numerous Roku engineering personnel, including Mike Fu, Amit Verma, Mark Goodwin, Jeff Bush, Kevin Gong, and Greg Gates, and covered VoiceBox's architecture, application programming interfaces, ASR integration, data ingestion capabilities, and scale of deployment. Roku's dissemination of this technical evaluation across its engineering organization, rather than confining it to a single employee, demonstrates that knowledge of VoiceBox's patented technology was not isolated within Roku but was shared among multiple Roku personnel responsible for evaluating and, ultimately,

designing Roku's own voice-enabled products.

47. Roku's engagement with VoiceBox's technology did not end in 2014 or 2015. In or around November 2016, VoiceBox and Roku resumed active discussions concerning cloud-based ASR and NLU processing for use across Roku's television and audio product lines. Beginning in January 2017, Roku's Hari Ramakrishnan, Edward Kwong, Greg Garner, and Soren Riise engaged in months of detailed technical and commercial negotiations with VoiceBox concerning trigger-word detection, ASR, and NLU functionality, including requests for VoiceBox's software development kit, sample recordings, false-acceptance-rate data, and comparative accuracy benchmarking against competing vendors.

48. In or around May 2017, Roku issued a formal Request for Information to VoiceBox concerning voice-recognition and natural-language-understanding technology. On May 25, 2017, Director of Product, Voice, Tyler Bell informed VoiceBox that, based on the information VoiceBox had provided, "Voicebox is on the shortlist," and Roku thereafter requested detailed technical materials from VoiceBox, including near-field and far-field voice sample transcriptions, so that Roku could benchmark VoiceBox's word-error rate and run Roku's "own tests through your NLU to look at intent match, entity match, and entity extraction per intent." On June 1, 2017, Roku's Tyler Bell shared with VoiceBox a preliminary domain, intent, and entity model that Roku had developed in connection with its evaluation of VoiceBox's technology.

49. On or about June 13–14, 2017, Roku executed a written "Voicebox Cloud Platform Evaluation Agreement" with VoiceBox, copies of which were distributed within Roku to, among others, Roku's revenue, accounts payable, and business development personnel. That executed agreement formally authorized and documented Roku's direct

technical access to VoiceBox's cloud platform, including the patented NLU functionality embedded therein, and forecloses any contention that Roku's access to and evaluation of VoiceBox's technology, including its patented NLU technology, was informal, incidental, or without corporate authorization.

50. On June 12, 2017, Roku's Beth Vandenberg, in her role as Assistant to Roku's Chief Executive Officer Anthony Wood, arranged an executive-level meeting between Roku's and VoiceBox's most senior leadership, which took place at Roku's Los Gatos, California headquarters on June 27, 2017. Following that meeting, on June 29, 2017, VoiceBox's Rich Kennewick provided Roku's Anthony Wood, Ilya Asnis (SVP Roku OS), and Tyler Bell with a hands-on demonstration script for VoiceBox's "S-Voice" product so that Roku's personnel, including its Chief Executive Officer, could personally test VoiceBox's patented conversational voice technology, and reiterated to Roku that VoiceBox's technology was already "shipping in hundreds of millions of devices a year worldwide."

51. Roku's pursuit of VoiceBox's patented ASR and NLU functionality continued for years after Roku first received written notice, in October and December 2014, that VoiceBox's NLU was patented. As late as September 4, 2017, Roku's Tyler Bell requested "final" ASR and NLU pricing quotes from VoiceBox, including non-recurring engineering costs, provided Roku's updated device volume projections, and proposed a revised per-device pricing structure, all in anticipation of an imminent Roku executive decision regarding whether to proceed. Roku's sustained, multi-year pursuit of the very categories of functionality it had been told were patented — spanning business development, engineering, and executive levels of Roku's organization — demonstrates that Roku's knowledge of VoiceBox's patented technology was neither fleeting nor confined to a single point in time, but was current,

continuous, and repeatedly reinforced throughout the parties' relationship.

52. Additionally, on information and belief, Roku gained further knowledge of VoiceBox's patents when former VoiceBox employees and computational linguists Elizabeth Bratt and Laura McMillan joined Roku in September 2018 and December 2021, as its Manager, Computational Linguist and Senior Computational Linguist, respectively.

53. Roku ultimately did not obtain a license from VoiceBox to use the Asserted VoiceBox Patents. Instead, Roku thereafter developed, marketed, and sold the Roku AI Products, which practice the patented ASR and NLU functionality that VoiceBox disclosed to Roku, and that Roku evaluated, tested, and negotiated to acquire, over the course of the parties' 2014 through 2017 dealings.

54. For at least the reasons set forth in Paragraphs 43–53 above, Roku knew of, or was willfully blind to, the existence of the Asserted VoiceBox Patents and VoiceBox's patent rights well before the filing of this Complaint, and Roku's continued development, marketing, and sale of the Roku AI Products has been, and continues to be, willful, deliberate, and undertaken without any reasonable basis for believing that Roku had a right to engage in the conduct described herein.

**COUNT 1: INFRINGEMENT OF THE '681 PATENT**

55. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

56. Roku, on its own, by conduct attributable to Roku, by conduct for which Roku is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '681 patent by performing all steps of the patented methods in the '681 patent using Roku AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts

mapping a claim to steps performed by Roku AI Products can be found in **Exhibit H**.[5] VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

57. To the extent any steps of the '681 patent's methods are deemed performed by another party, such as end users on end user devices, Roku directs or controls such performance because Roku: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Roku conditions users' participation in voice interactions with Roku AI Products and receipt of the benefits of Roku AI Products upon users performing claimed method step(s) because, for example, Roku designed its software so that user devices must receive utterances from users in order for Roku's software to perform the remaining steps of the methods and provide a response to the user. Roku establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Roku and Roku is liable for direct infringement of the '681 patent.

58. On information and belief, and for at least the reasons set forth in Paragraphs 43-53 above, Roku knew of or was willfully blind to the existence of the '681 patent no later than October 10, 2014, when VoiceBox notified Roku in writing that VoiceBox's NLU technology was patented, which notice Roku received years after the '681 patent's December 6, 2011 issuance. Alternatively or additionally, Roku knew of or was willfully blind to the existence of the '681 patent no later than January 2015, when Roku's own engineering

[5] All references in Exhibit titles to specific Roku AI Products, e.g., Roku Voice Remote, Roku Voice Remote Pro, and Roku Mobile App, are for convenience only and are not limiting.

personnel conducted a technical deep dive into VoiceBox's patented architecture and capabilities, or no later than June 2017, when Roku executed the VoiceBox Cloud Platform Evaluation Agreement and obtained direct access to VoiceBox's patented platform. On information and belief, Roku knew, or was willfully blind to the fact, that the Roku AI Products perform every step of the patented methods of the '681 patent, that Roku directly infringes the '681 patent, and that its actions would induce and contribute to infringement by Roku AI Product users, including because Roku subjectively believed there was a high probability these facts existed in light of its multi-year investigation and analysis of VoiceBox's patented technology for a potential license, and took deliberate action to avoid confirming these facts. Alternatively or additionally, Roku has had actual notice that it, its end users, or some combination of the foregoing infringe the '681 patent at least as of the date of the filing of this Complaint. For at least these reasons, Roku's infringement of the '681 patent has been, and continues to be, knowing, intentional, and willful.

59. Roku has been and is inducing infringement of the '681 patent by actively and knowingly inducing others, such as end users, to use Roku AI Products to perform the method steps of the inventions claimed in the '681 patent in violation of 35 U.S.C. § 271(b). On information and belief, Roku knew of or was willfully blind to the '681 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Roku wrote software for Roku AI Products and designed Roku AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Roku caused Roku AI Products to be made available through its own website and third party sellers. Roku profits from its own sales and those of third parties who sell Roku AI Products. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such

use, including on its website and also through the user interfaces for Roku AI Products.

60. Roku instructs and encourages users of the Roku AI Products to infringe the ’681 patent. For example, Roku instructs and encourages users to operate the Roku AI Products such that the products provide a cooperative conversational voice user interface. As shown below, Roku’s support page entitled “How to set up and pair your Roku voice remote” instructs users to interact with Roku AI Products using conversational voice commands.[6]

## How to set up and pair your Roku voice remote

Your Roku® voice remote connects to your Roku streaming player or Roku TV™ system through a wireless process called pairing. Once paired, you can use all features, including Roku voice search. If you are setting up a Roku Touch® tabletop remote, see **Connecting and using your Roku Touch**.

Id.

### Using your Roku Voice Remote

**Voice Controls:**

- **Push-to-talk:** Press the voice button, say a command, and release. Example: *“Search for comedies”* or *“Launch The Roku Channel.”*
- **Hands-free (Roku Voice Remote Pro):** Turn on the slider to green, then say commands aloud. Example: *“Hey Roku, show me the news.”*

Id.

61. Roku has been and is continuing to contributorily infringe the ‘681 patent by selling or offering to sell specialized software for Roku AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the ‘681 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Roku’s specialized software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the specialized software. On information and belief, Roku wrote and updated software for Roku AI Products

[6] https://support.roku.com/article/pair-your-voice-remote.

and designed the user interface for Roku AI Products to operate in an infringing manner, including after Roku learned of the patent. Roku causes the software for Roku AI Products to be made available through its own website and services, as well as through third party sellers. On information and belief, Roku also profits from its own sales and those of third parties who sell Roku AI Products with software designed and coded by Roku to infringe. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Roku AI Products.

62. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the ’681 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Roku’s products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of Roku’s devices that incorporate Roku Voice capabilities through Roku’s APIs and SDKs.[7] The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Roku and third-party hardware devices and other general computing functions of Roku’s devices.

[7] https://developer.roku.com/dev/docs/voice.

# Roku Voice

Integrate voice features including Direct to Play, voice keyboards, and playback controls

> This page applies to publishers who build Roku apps. If you distribute content on The Roku Channel, see the Roku Content Partner Portal.

Roku Voice enables publishers to build voice-enabled apps that empower customers with the convenience of using their voice to launch, access, and control the playback of content. With Roku Voice, publishers can integrate the following features to accelerate content delivery and simplify playback:

- Direct to Play. Launches requested content directly into playback.
- Voice keyboards. Enables customers to say their email address, password, PIN, and method of payment (MOP) when accessing an app.
- Voice-enabled profile selection screens. Enables customers to audibly select which user profile to use when accessing an app.
- Voice controls. Handles voice commands for controlling the playback of content.

*Id.*

63. On information and belief, Roku knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the ’681 patent because, when activated, it performs the patented methods—namely, receiving natural language utterances, determining intended meaning using short-term and long-term shared knowledge, and generating grammatically or syntactically adapted responses. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Roku’s TV products—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

64. Roku’s infringement has been, and continues to be, knowing, intentional, and willful. On information and belief, Roku has known of the existence of the ‘681 patent, and its

acts of infringement have been and are willful and in disregard for the ‘681 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

65. Roku’s acts of infringement of the ‘681 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

66. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys’ fees pursuant to 35 U.S.C. § 285.

**COUNT 2: INFRINGEMENT OF THE ’341 PATENT**

67. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

68. Roku, on its own, by conduct attributable to Roku, by conduct for which Roku is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the ‘341 patent by performing all steps of the patented methods in the ‘341 patent using Roku AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Roku AI Products can be found in **Exhibit I**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

69. To the extent any steps of the ‘341 patent’s methods are deemed performed by another party, such as end users on end user devices, Roku directs or controls such performance because Roku: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Roku conditions users’ participation in voice interactions with Roku AI Products and receipt of the benefits of Roku AI Products upon users performing claimed method step(s) because, for example, Roku designed its software so that user devices must receive utterances

from users in order for Roku's software to perform the remaining steps of the methods and provide a response to the user. Roku establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Roku and Roku is liable for direct infringement of the '341 patent.

70. On information and belief, and for at least the reasons set forth in Paragraphs 43-53 above, Roku knew of or was willfully blind to the existence of the '341 patent no later than its December 17, 2019 issuance, at which point Roku had already received repeated written notice, dating back to October 2014, that VoiceBox's underlying NLU technology was patented, had conducted its own engineering deep dive into that technology in January 2015, and had, by June 2017, executed a written agreement granting Roku direct access to VoiceBox's patented cloud platform. On information and belief, Roku was at least willfully blind to the facts that the Roku AI Products perform every step of the patented methods of the '341 patent, that Roku directly infringes the '341 patent, and that its actions would induce and contribute to infringement by Roku AI Product users, because Roku subjectively believed there was a high probability these facts existed in light of its multi-year investigation and analysis of VoiceBox's patented technology for a potential license, and took deliberate action to avoid confirming these facts. Alternatively or additionally, Roku has had actual notice that it, its end users, or some combination of the foregoing infringe the '341 patent at least as of the date of the filing of this Complaint. For at least these reasons, Roku's infringement of the '341 patent has been, and continues to be, knowing, intentional, and willful.

71. Roku has been and is inducing infringement of the '341 patent by actively and knowingly inducing others, such as end users, to use Roku AI Products to perform the method

steps of the inventions claimed in the '341 patent in violation of 35 U.S.C. § 271(b). On information and belief, Roku knew of or was willfully blind to the '341 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Roku wrote software for Roku AI Products and designed Roku AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Roku caused Roku AI Products to be made available through its own website and third party sellers. Roku profits from its own sales and those of third parties who sell Roku AI Products. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Roku AI Products.

72. Roku instructs and encourages users of the Roku AI Products to infringe the '341 patent. For example, Roku instructs and encourages users to operate the Roku AI Products such that the products provide a cooperative conversational voice user interface. As shown below, Roku's support page entitled "How to set up and pair your Roku voice remote" instructs users to interact with Roku AI Products using conversational voice commands.[8]

# How to set up and pair your Roku voice remote

Your Roku® voice remote connects to your Roku streaming player or Roku TV™ system through a wireless process called pairing. Once paired, you can use all features, including Roku voice search. If you are setting up a Roku Touch® tabletop remote, see **Connecting and using your Roku Touch**.

*Id.*

## Using your Roku Voice Remote

**Voice Controls:**

- **Push-to-talk:** Press the voice button, say a command, and release. Example: *"Search for comedies"* or *"Launch The Roku Channel."*
- **Hands-free (Roku Voice Remote Pro):** Turn on the slider to green, then say commands aloud. Example: *"Hey Roku, show me the news."*

*Id.*

[8] https://support.roku.com/article/pair-your-voice-remote.

73. Roku has been and is continuing to contributorily infringe the ‘341 patent by selling or offering to sell specialized software for Roku AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the ‘341 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Roku’s specialized software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the specialized software. On information and belief, Roku wrote and updated software for Roku AI Products and designed the user interface for Roku AI Products to operate in an infringing manner, including after Roku learned of the patent. Roku causes the software for Roku AI Products to be made available through its own website and services, as well as through third party sellers. On information and belief, Roku also profits from its own sales and those of third parties who sell Roku AI Products with software designed and coded by Roku to infringe. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Roku AI Products.

74. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the ’341 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Roku’s products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of Roku’s devices that incorporate Roku Voice

capabilities through Roku's APIs and SDKs.[9] The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Roku and third-party hardware devices and other general computing functions of Roku's devices.

# Roku Voice

Integrate voice features including Direct to Play, voice keyboards, and playback controls

> This page applies to publishers who build Roku apps. If you distribute content on The Roku Channel, see the Roku Content Partner Portal.

Roku Voice enables publishers to build voice-enabled apps that empower customers with the convenience of using their voice to launch, access, and control the playback of content. With Roku Voice, publishers can integrate the following features to accelerate content delivery and simplify playback:

- Direct to Play. Launches requested content directly into playback.
- Voice keyboards. Enables customers to say their email address, password, PIN, and method of payment (MOP) when accessing an app.
- Voice-enabled profile selection screens. Enables customers to audibly select which user profile to use when accessing an app.
- Voice controls. Handles voice commands for controlling the playback of content.

*Id.*

75. On information and belief, Roku knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the '341 patent because, when activated, it performs the patented methods—namely, receiving natural language utterances, determining intended meaning using short-term and long-term shared knowledge, and generating grammatically or syntactically adapted responses. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products

[9] https://developer.roku.com/dev/docs/voice.

in which the Specialized AI Software is incorporated—such as Roku's TV products—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

76. Roku's infringement has been, and continues to be, knowing, intentional, and willful. On information and belief, Roku has known of the existence of the '341 patent, and its acts of infringement have been and are willful and in disregard for the '341 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

77. Roku's acts of infringement of the '341 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

78. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT 3: INFRINGEMENT OF THE '699 PATENT**

79. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

80. Roku, on its own, by conduct attributable to Roku, by conduct for which Roku is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '699 patent by performing all steps of the patented methods in the '699 patent using Roku AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Roku AI Products can be found in **Exhibit J**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

81. To the extent any steps of the '699 patent's methods are deemed performed by another party, such as end users on end user devices, Roku directs or controls such performance

because Roku: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Roku conditions users' participation in voice interactions with Roku AI Products and receipt of the benefits of Roku AI Products upon users performing claimed method step(s) because, for example, Roku designed its software so that user devices must receive utterances from users in order for Roku's software to perform the remaining steps of the methods and provide a response to the user. Roku establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Roku and Roku is liable for direct infringement of the '699 patent.

82. On information and belief, and for at least the reasons set forth in Paragraphs 43-53 above, Roku knew of or was willfully blind to the existence of the '699 patent no later than its August 25, 2020 issuance, given Roku's years of prior direct notice of, and technical access to, VoiceBox's patented Cooperative Conversations technology, including the written notices of October and December 2014, the January 2015 engineering deep dive, and the June 2017 Cloud Platform Evaluation Agreement. On information and belief, Roku was at least willfully blind to the facts that the Roku AI Products perform every step of the patented methods of the '699 patent, that Roku directly infringes the '699 patent, and that its actions would induce and contribute to infringement by Roku AI Product users, because Roku subjectively believed there was a high probability these facts existed in light of its longstanding investigation of VoiceBox's patented technology and took deliberate action to avoid confirming them. Alternatively or additionally, Roku has had actual notice that it, its end users, or some combination of the foregoing infringe the '699 patent at least as of the date of the

filing of this Complaint. For at least these reasons, Roku's infringement of the '699 patent has been, and continues to be, knowing, intentional, and willful.

83. Roku has been and is inducing infringement of the '699 patent by actively and knowingly inducing others, such as end users, to use Roku AI Products to perform the method steps of the inventions claimed in the '699 patent in violation of 35 U.S.C. § 271(b). On information and belief, Roku knew of or was willfully blind to the '699 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Roku wrote software for Roku AI Products and designed Roku AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Roku caused Roku AI Products to be made available through its own website and third party sellers. Roku profits from its own sales and those of third parties who sell Roku AI Products. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Roku AI Products.

84. Roku instructs and encourages users of the Roku AI Products to infringe the '699 patent. For example, Roku instructs and encourages users to operate the Roku AI Products such that the products provide a cooperative conversational voice user interface. As shown below, Roku's support page entitled "How to set up and pair your Roku voice remote" instructs users to interact with Roku AI Products using conversational voice commands.[10]

## How to set up and pair your Roku voice remote

Your Roku® voice remote connects to your Roku streaming player or Roku TV™ system through a wireless process called pairing. Once paired, you can use all features, including Roku voice search. If you are setting up a Roku Touch® tabletop remote, see **Connecting and using your Roku Touch**.

*Id.*

[10] https://support.roku.com/article/pair-your-voice-remote.

### Using your Roku Voice Remote

**Voice Controls:**

- **Push-to-talk:** Press the voice button, say a command, and release. Example: "*Search for comedies*" or "*Launch The Roku Channel.*"
- **Hands-free (Roku Voice Remote Pro):** Turn on the slider to green, then say commands aloud. Example: "*Hey Roku, show me the news.*"

Id.

85. Roku has been and is continuing to contributorily infringe the '699 patent by selling or offering to sell specialized software for Roku AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the '699 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Roku's specialized software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the specialized software. On information and belief, Roku wrote and updated software for Roku AI Products and designed the user interface for Roku AI Products to operate in an infringing manner, including after Roku learned of the patent. Roku causes the software for Roku AI Products to be made available through its own website and services, as well as through third party sellers. On information and belief, Roku also profits from its own sales and those of third parties who sell Roku AI Products with software designed and coded by Roku to infringe. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Roku AI Products.

86. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the '699 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI

engines apart from other, unaccused, hardware and software components of Roku's products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of Roku's devices that incorporate Roku Voice capabilities through Roku's APIs and SDKs.[11] The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Roku and third-party hardware devices and other general computing functions of Roku's devices.

# Roku Voice

Integrate voice features including Direct to Play, voice keyboards, and playback controls

---

> This page applies to publishers who build Roku apps. If you distribute content on The Roku Channel, see the Roku Content Partner Portal.

Roku Voice enables publishers to build voice-enabled apps that empower customers with the convenience of using their voice to launch, access, and control the playback of content. With Roku Voice, publishers can integrate the following features to accelerate content delivery and simplify playback:

- Direct to Play. Launches requested content directly into playback.
- Voice keyboards. Enables customers to say their email address, password, PIN, and method of payment (MOP) when accessing an app.
- Voice-enabled profile selection screens. Enables customers to audibly select which user profile to use when accessing an app.
- Voice controls. Handles voice commands for controlling the playback of content.

*Id.*

87. On information and belief, Roku knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the '699 patent because, when activated, it performs the patented methods—namely, receiving natural language utterances, determining intended meaning using short-term and long-term shared knowledge, and generating grammatically or

---

[11] https://developer.roku.com/dev/docs/voice.

syntactically adapted responses. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Roku's TV products—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

88. Roku's infringement has been, and continues to be, knowing, intentional, and willful. On information and belief, Roku has known of the existence of the '699 patent, and its acts of infringement have been and are willful and in disregard for the '699 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

89. Roku's acts of infringement of the '699 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

90. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT 4: INFRINGEMENT OF THE '176 PATENT**

91. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

92. Roku, on its own, by conduct attributable to Roku, by conduct for which Roku is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '176 patent by performing all steps of the patented methods in the '176 patent using Roku AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Roku AI Products can be found in **Exhibit K**. VoiceBox anticipates identifying additional asserted claims in accordance with the case

schedule and its discovery obligations.

93. To the extent any steps of the '176 patent's methods are deemed performed by another party, such as end users on end user devices, Roku directs or controls such performance because Roku: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Roku conditions users' participation in voice interactions with Roku AI Products and receipt of the benefits of Roku AI Products upon users performing claimed method step(s) because, for example, Roku designed its software so that user devices must receive utterances from users in order for Roku's software to perform the remaining steps of the methods and provide a response to the user. Roku establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Roku and Roku is liable for direct infringement of the '176 patent.

94. On information and belief, and for at least the reasons set forth in Paragraphs 43-53 above, Roku knew of or was willfully blind to the existence of the '176 patent no later than October 10, 2014, when VoiceBox first notified Roku in writing that its NLU technology was patented, years after the '176 patent's October 19, 2010 issuance. Alternatively or additionally, Roku knew of or was willfully blind to the existence of the '176 patent no later than the dates of Roku's subsequent technical evaluations of VoiceBox's patented advertisement-related NLU functionality, including during the parties' 2017 technical assessment process and Roku's execution of the Cloud Platform Evaluation Agreement in June 2017. On information and belief, Roku was at least willfully blind to the facts that the Roku AI Products perform every step of the patented methods of the '176 patent, that Roku directly

infringes the '176 patent, and that its actions would induce and contribute to infringement by Roku AI Product users, because Roku subjectively believed there was a high probability these facts existed in light of its multi-year investigation and analysis of VoiceBox's patented technology for a potential license, and took deliberate action to avoid confirming these facts. Alternatively or additionally, Roku has had actual notice that it, its end users, or some combination of the foregoing infringe the '176 patent at least as of the date of the filing of this Complaint. For at least these reasons, Roku's infringement of the '176 patent has been, and continues to be, knowing, intentional, and willful.

95. Roku has been and is inducing infringement of the '176 patent by actively and knowingly inducing others, such as end users, to use Roku AI Products to perform the method steps of the inventions claimed in the '176 patent in violation of 35 U.S.C. § 271(b). On information and belief, Roku knew of or was willfully blind to the '176 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Roku wrote software for Roku AI Products and designed Roku AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Roku caused Roku AI Products to be made available through its own website and third party sellers. Roku profits from its own sales and those of third parties who sell Roku AI Products. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Roku AI Products.

96. Roku instructs and encourages users of the Roku AI Products to infringe the '176 patent. For example, Roku instructs and encourages users to operate the Roku AI Products such that the products provide a cooperative conversational voice user interface. As shown below, Roku's support page entitled "How to set up and pair your Roku voice remote"

instructs users to interact with Roku AI Products using conversational voice commands.[12]

## How to set up and pair your Roku voice remote

Your Roku® voice remote connects to your Roku streaming player or Roku TV™ system through a wireless process called pairing. Once paired, you can use all features, including Roku voice search. If you are setting up a Roku Touch® tabletop remote, see Connecting and using your Roku Touch.

Id.

### Using your Roku Voice Remote

**Voice Controls:**

- **Push-to-talk:** Press the voice button, say a command, and release. Example: *"Search for comedies"* or *"Launch The Roku Channel."*
- **Hands-free (Roku Voice Remote Pro):** Turn on the slider to green, then say commands aloud. Example: *"Hey Roku, show me the news."*

Id.

97. Roku has been and is continuing to contributorily infringe the '176 patent by selling or offering to sell specialized software for Roku AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the '176 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Roku's specialized software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the specialized software. On information and belief, Roku wrote and updated software for Roku AI Products and designed the user interface for Roku AI Products to operate in an infringing manner, including after Roku learned of the patent. Roku causes the software for Roku AI Products to be made available through its own website and services, as well as through third party sellers. On information and belief, Roku also profits from its own sales and those of third parties who sell Roku AI Products with software designed and coded by Roku to infringe. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such

[12] https://support.roku.com/article/pair-your-voice-remote.

use, including on its website and through the user interfaces for Roku AI Products.

98. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the ’176 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Roku’s products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of Roku’s devices that incorporate Roku Voice capabilities through Roku’s APIs and SDKs.[13] The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Roku and third-party hardware devices and other general computing functions of Roku’s devices.

## Roku Voice

Integrate voice features including Direct to Play, voice keyboards, and playback controls

> This page applies to publishers who build Roku apps. If you distribute content on The Roku Channel, see the Roku Content Partner Portal.

Roku Voice enables publishers to build voice-enabled apps that empower customers with the convenience of using their voice to launch, access, and control the playback of content. With Roku Voice, publishers can integrate the following features to accelerate content delivery and simplify playback:

- Direct to Play. Launches requested content directly into playback.
- Voice keyboards. Enables customers to say their email address, password, PIN, and method of payment (MOP) when accessing an app.
- Voice-enabled profile selection screens. Enables customers to audibly select which user profile to use when accessing an app.
- Voice controls. Handles voice commands for controlling the playback of content.

*Id.*

[13] https://developer.roku.com/dev/docs/voice.

99. On information and belief, Roku knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the ’176 patent because, when activated, it performs the patented methods—namely, receiving natural language utterances, determining intended meaning using short-term and long-term shared knowledge, and generating grammatically or syntactically adapted responses. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Roku’s TV products—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

100. Roku’s infringement has been, and continues to be, knowing, intentional, and willful. On information and belief, Roku has known of the existence of the ‘176 patent, and its acts of infringement have been and are willful and in disregard for the ‘176 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

101. Roku’s acts of infringement of the ‘176 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

102. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys’ fees pursuant to 35 U.S.C. § 285.

**COUNT 5: INFRINGEMENT OF THE ’097 PATENT**

103. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

104. Roku, on its own, by conduct attributable to Roku, by conduct for which Roku is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '097 patent by performing all steps of the patented methods in the '097 patent using Roku AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Roku AI Products can be found in **Exhibit L**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

105. To the extent any steps of the '097 patent's methods are deemed performed by another party, such as end users on end user devices, Roku directs or controls such performance because Roku: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Roku conditions users' participation in voice interactions with Roku AI Products and receipt of the benefits of Roku AI Products upon users performing claimed method step(s) because, for example, Roku designed its software so that user devices must receive utterances from users in order for Roku's software to perform the remaining steps of the methods and provide a response to the user. Roku establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Roku and Roku is liable for direct infringement of the '097 patent.

106. On information and belief, and for at least the reasons set forth in Paragraphs 43-53 above, Roku knew of or was willfully blind to the existence of the '097 patent no later than its February 23, 2016 issuance, at which point Roku had already received written notice, in October and December 2014, that VoiceBox's NLU technology was patented, and had

directly evaluated that technology through its own engineering personnel. Alternatively or additionally, Roku knew of or was willfully blind to the existence of the '097 patent no later than the date of Roku's 2017 technical assessment of VoiceBox's NLU capabilities and Roku's execution of the Cloud Platform Evaluation Agreement in June 2017. On information and belief, Roku was at least willfully blind to the facts that the Roku AI Products perform every step of the patented methods of the '097 patent, that Roku directly infringes the '097 patent, and that its actions would induce and contribute to infringement by Roku AI Product users, because Roku subjectively believed there was a high probability these facts existed in light of its multi-year investigation and analysis of VoiceBox's patented technology for a potential license, and took deliberate action to avoid confirming these facts. Alternatively or additionally, Roku has had actual notice that it, its end users, or some combination of the foregoing infringe the '097 patent at least as of the date of the filing of this Complaint. For at least these reasons, Roku's infringement of the '097 patent has been, and continues to be, knowing, intentional, and willful.

107. Roku instructs and encourages users of the Roku AI Products to infringe the '097 patent. For example, Roku instructs and encourages users to operate the Roku AI Products such that the products provide a cooperative conversational voice user interface. As shown below, Roku's support page entitled "How to set up and pair your Roku voice remote" instructs users to interact with Roku AI Products using conversational voice commands.[14]

## How to set up and pair your Roku voice remote

Your Roku® voice remote connects to your Roku streaming player or Roku TV™ system through a wireless process called pairing. Once paired, you can use all features, including Roku voice search. If you are setting up a Roku Touch® tabletop remote, see **Connecting and using your Roku Touch**.

[14] https://support.roku.com/article/pair-your-voice-remote.

*Id.*

Using your Roku Voice Remote

**Voice Controls:**

- **Push-to-talk:** Press the voice button, say a command, and release. Example: *"Search for comedies"* or *"Launch The Roku Channel."*
- **Hands-free (Roku Voice Remote Pro):** Turn on the slider to green, then say commands aloud. Example: *"Hey Roku, show me the news."*

*Id.*

108. Roku has been and is inducing infringement of the '097 patent by actively and knowingly inducing others, such as end users, to use Roku AI Products to perform the method steps of the inventions claimed in the '097 patent in violation of 35 U.S.C. § 271(b). On information and belief, Roku knew of or was willfully blind to the '097 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Roku wrote software for Roku AI Products and designed Roku AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Roku caused Roku AI Products to be made available through its own website and third party sellers. Roku profits from its own sales and those of third parties who sell Roku AI Products. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Roku AI Products.

109. Roku has been and is continuing to contributorily infringe the '097 patent by selling or offering to sell specialized software for Roku AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the '097 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Roku's specialized software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the specialized software. On information and belief, Roku wrote and updated software for Roku AI Products

and designed the user interface for Roku AI Products to operate in an infringing manner, including after Roku learned of the patent. Roku causes the software for Roku AI Products to be made available through its own website and services, as well as through third party sellers. On information and belief, Roku also profits from its own sales and those of third parties who sell Roku AI Products with software designed and coded by Roku to infringe. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Roku AI Products.

110. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the ’097 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Roku’s products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of Roku’s devices that incorporate Roku Voice capabilities through Roku’s APIs and SDKs.[15] The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Roku and third-party hardware devices and other general computing functions of Roku’s devices.

---

[15] https://developer.roku.com/dev/docs/voice.

# Roku Voice

Integrate voice features including Direct to Play, voice keyboards, and playback controls

> This page applies to publishers who build Roku apps. If you distribute content on The Roku Channel, see the Roku Content Partner Portal.

Roku Voice enables publishers to build voice-enabled apps that empower customers with the convenience of using their voice to launch, access, and control the playback of content. With Roku Voice, publishers can integrate the following features to accelerate content delivery and simplify playback:

- Direct to Play. Launches requested content directly into playback.
- Voice keyboards. Enables customers to say their email address, password, PIN, and method of payment (MOP) when accessing an app.
- Voice-enabled profile selection screens. Enables customers to audibly select which user profile to use when accessing an app.
- Voice controls. Handles voice commands for controlling the playback of content.

*Id.*

111. On information and belief, Roku knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the ’097 patent because, when activated, it performs the patented methods—namely, receiving natural language utterances, determining intended meaning using short-term and long-term shared knowledge, and generating grammatically or syntactically adapted responses. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Roku’s TV products—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

112. Roku’s infringement has been, and continues to be, knowing, intentional, and willful. On information and belief, Roku has known of the existence of the ‘097 patent, and its

acts of infringement have been and are willful and in disregard for the '097 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

113. Roku's acts of infringement of the '097 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

114. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT 6: INFRINGEMENT OF THE '758 PATENT**

115. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

116. Roku, on its own, by conduct attributable to Roku, by conduct for which Roku is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '758 patent by performing all steps of the patented methods in the '758 patent using Roku AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Roku AI Products can be found in **Exhibit M**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

117. To the extent any steps of the '758 patent's methods are deemed performed by another party, such as end users on end user devices, Roku directs or controls such performance because Roku: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Roku conditions users' participation in voice interactions with Roku AI Products and receipt of the benefits of Roku AI Products upon users performing claimed method step(s) because, for example, Roku designed its software so that user devices must receive utterances

from users in order for Roku's software to perform the remaining steps of the methods and provide a response to the user. Roku establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Roku and Roku is liable for direct infringement of the '758 patent.

118. On information and belief, and for at least the reasons set forth in Paragraphs 43-53 above, Roku knew of or was willfully blind to the existence of the '758 patent no later than its August 3, 2021 issuance, given Roku's years of accumulated notice of, and direct technical access to, VoiceBox's patented advertisement-related NLU technology dating back to October 2014, and Roku's execution of the Cloud Platform Evaluation Agreement in June 2017. On information and belief, Roku was at least willfully blind to the facts that the Roku AI Products perform every step of the patented methods of the '758 patent, that Roku directly infringes the '758 patent, and that its actions would induce and contribute to infringement by Roku AI Product users, because Roku subjectively believed there was a high probability these facts existed in light of its multi-year investigation and analysis of VoiceBox's patented technology for a potential license, and took deliberate action to avoid confirming these facts. Alternatively or additionally, Roku has had actual notice that it, its end users, or some combination of the foregoing infringe the '758 patent at least as of the date of the filing of this Complaint. For at least these reasons, Roku's infringement of the '758 patent has been, and continues to be, knowing, intentional, and willful.

119. Roku has been and is inducing infringement of the '758 patent by actively and knowingly inducing others, such as end users, to use Roku AI Products to perform the method steps of the inventions claimed in the '758 patent in violation of 35 U.S.C. § 271(b). On

information and belief, Roku knew of or was willfully blind to the ‘758 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Roku wrote software for Roku AI Products and designed Roku AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Roku caused Roku AI Products to be made available through its own website and third party sellers. Roku profits from its own sales and those of third parties who sell Roku AI Products. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Roku AI Products.

120. Roku instructs and encourages users of the Roku AI Products to infringe the ’758 patent. For example, Roku instructs and encourages users to operate the Roku AI Products such that the products provide a cooperative conversational voice user interface. As shown below, Roku’s support page entitled “How to set up and pair your Roku voice remote” instructs users to interact with Roku AI Products using conversational voice commands.[16]

## How to set up and pair your Roku voice remote

Your Roku® voice remote connects to your Roku streaming player or Roku TV™ system through a wireless process called pairing. Once paired, you can use all features, including Roku voice search. If you are setting up a Roku Touch® tabletop remote, see **Connecting and using your Roku Touch**.

*Id.*

### Using your Roku Voice Remote

**Voice Controls:**

- **Push-to-talk:** Press the voice button, say a command, and release. Example: *“Search for comedies”* or *“Launch The Roku Channel.”*
- **Hands-free (Roku Voice Remote Pro):** Turn on the slider to green, then say commands aloud. Example: *“Hey Roku, show me the news.”*

*Id.*

121. Roku has been and is continuing to contributorily infringe the ‘758 patent by

[16] https://support.roku.com/article/pair-your-voice-remote.

selling or offering to sell specialized software for Roku AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the '758 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Roku's specialized software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the specialized software. On information and belief, Roku wrote and updated software for Roku AI Products and designed the user interface for Roku AI Products to operate in an infringing manner, including after Roku learned of the patent. Roku causes the software for Roku AI Products to be made available through its own website and services, as well as through third party sellers. On information and belief, Roku also profits from its own sales and those of third parties who sell Roku AI Products with software designed and coded by Roku to infringe. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Roku AI Products.

122. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the '758 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI engines apart from other, unaccused, hardware and software components of Roku's products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of Roku's devices that incorporate Roku Voice capabilities through Roku's APIs and SDKs.[17] The Specialized AI Software is separate and

[17] https://developer.roku.com/dev/docs/voice.

distinct from other, unaccused, features and functions of Roku and third-party hardware devices and other general computing functions of Roku's devices.

## Roku Voice

Integrate voice features including Direct to Play, voice keyboards, and playback controls

> This page applies to publishers who build Roku apps. If you distribute content on The Roku Channel, see the Roku Content Partner Portal.

Roku Voice enables publishers to build voice-enabled apps that empower customers with the convenience of using their voice to launch, access, and control the playback of content. With Roku Voice, publishers can integrate the following features to accelerate content delivery and simplify playback:

- Direct to Play. Launches requested content directly into playback.
- Voice keyboards. Enables customers to say their email address, password, PIN, and method of payment (MOP) when accessing an app.
- Voice-enabled profile selection screens. Enables customers to audibly select which user profile to use when accessing an app.
- Voice controls. Handles voice commands for controlling the playback of content.

*Id.*

123. On information and belief, Roku knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the '758 patent because, when activated, it performs the patented methods—namely, receiving natural language utterances, determining intended meaning using short-term and long-term shared knowledge, and generating grammatically or syntactically adapted responses. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Roku's TV products—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

124. Roku's infringement has been, and continues to be, knowing, intentional, and willful. On information and belief, Roku has known of the existence of the '758 patent, and its acts of infringement have been and are willful and in disregard for the '758 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

125. Roku's acts of infringement of the '758 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

126. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

**COUNT 7: INFRINGEMENT OF THE '385 PATENT**

127. VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

128. Roku, on its own, by conduct attributable to Roku, by conduct for which Roku is legally responsible, or a combination of the foregoing, has infringed and continues to infringe the '385 patent by performing all steps of the patented methods in the '385 patent using Roku AI Products in violation of 35 U.S.C. § 271(a). Exemplary evidence and exemplary charts mapping a claim to steps performed by Roku AI Products can be found in Exhibit N. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

129. To the extent any steps of the '385 patent's methods are deemed performed by another party, such as end users on end user devices, Roku directs or controls such performance because Roku: (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner or timing of that performance. Roku conditions users' participation in voice interactions with Roku AI Products

and receipt of the benefits of Roku AI Products upon users performing claimed method step(s) because, for example, Roku designed its software so that user devices must receive utterances from users in order for Roku's software to perform the remaining steps of the methods and provide a response to the user. Roku establishes the manner or timing of that performance through its software and user interface design, terms of service, user documentation, setup guides, and in-product instructions. Accordingly, any method steps performed by a user device are attributable to Roku and Roku is liable for direct infringement of the '385 patent.

130. On information and belief, and for at least the reasons set forth in Paragraphs 43-53 above, Roku knew of or was willfully blind to the existence of the '385 patent no later than its August 10, 2021 issuance, at which point Roku had for years possessed actual knowledge of VoiceBox's patented voice-commerce technology, including through the parties' 2017 negotiations regarding voice-commerce functionality and revenue sharing and Roku's June 2017 execution of the Cloud Platform Evaluation Agreement granting Roku direct access to VoiceBox's patented platform. On information and belief, Roku was at least willfully blind to the facts that the Roku AI Products perform every step of the patented methods of the '385 patent, that Roku directly infringes the '385 patent, and that its actions would induce and contribute to infringement by Roku AI Product users, because Roku subjectively believed there was a high probability these facts existed in light of its multi-year investigation and analysis of VoiceBox's patented technology for a potential license, and took deliberate action to avoid confirming these facts. Alternatively or additionally, Roku has had actual notice that it, its end users, or some combination of the foregoing infringe the '385 patent at least as of the date of the filing of this Complaint. For at least these reasons, Roku's infringement of the '385 patent has been, and continues to be, knowing, intentional, and willful.

131. Roku has been and is inducing infringement of the '385 patent by actively and knowingly inducing others, such as end users, to use Roku AI Products to perform the method steps of the inventions claimed in the '385 patent in violation of 35 U.S.C. § 271(b). On information and belief, Roku knew of or was willfully blind to the '385 patent and the fact that the foregoing induced acts constitute patent infringement. On information and belief, Roku wrote software for Roku AI Products and designed Roku AI Products to operate in an infringing manner, and instructs and markets to users to infringe the patent. Roku caused Roku AI Products to be made available through its own website and third party sellers. Roku profits from its own sales and those of third parties who sell Roku AI Products. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such use, including on its website and also through the user interfaces for Roku AI Products.

132. Roku instructs and encourages users of the Roku AI Products to infringe the '385 patent. For example, Roku instructs and encourages users to operate the Roku AI Products such that the products provide a cooperative conversational voice user interface. As shown below, Roku's support page entitled "How to set up and pair your Roku voice remote" instructs users to interact with Roku AI Products using conversational voice commands.[18]

## How to set up and pair your Roku voice remote

Your Roku® voice remote connects to your Roku streaming player or Roku TV™ system through a wireless process called pairing. Once paired, you can use all features, including Roku voice search. If you are setting up a Roku Touch® tabletop remote, see **Connecting and using your Roku Touch**.

*Id.*

[18] https://support.roku.com/article/pair-your-voice-remote.

## Using your Roku Voice Remote

**Voice Controls:**

- **Push-to-talk:** Press the voice button, say a command, and release. Example: *"Search for comedies"* or *"Launch The Roku Channel."*
- **Hands-free (Roku Voice Remote Pro):** Turn on the slider to green, then say commands aloud. Example: *"Hey Roku, show me the news."*

*Id.*

133. Roku has been and is continuing to contributorily infringe the '385 patent by selling or offering to sell specialized software for Roku AI Products, knowing the software to be especially made or especially adapted for practicing the inventions of the '385 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c). Roku's specialized software is a material part of the patented invention. The attached claim charts include exemplary methods executed by the specialized software. On information and belief, Roku wrote and updated software for Roku AI Products and designed the user interface for Roku AI Products to operate in an infringing manner, including after Roku learned of the patent. Roku causes the software for Roku AI Products to be made available through its own website and services, as well as through third party sellers. On information and belief, Roku also profits from its own sales and those of third parties who sell Roku AI Products with software designed and coded by Roku to infringe. Roku instructs users to use Roku AI Products in an infringing manner and provides technical support for such use, including on its website and through the user interfaces for Roku AI Products.

134. As another example, the Specialized AI Software is a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing one or more patented processes covered by the '385 patent, constituting a material part of the invention(s). Specifically, the Specialized AI Software (which includes, for example, the speech recognition, natural language understanding, and conversational AI

engines apart from other, unaccused, hardware and software components of Roku's products) is a component of one or more of the patented method claims. As further examples, the Specialized AI Software is a component of Roku's devices that incorporate Roku Voice capabilities through Roku's APIs and SDKs.[19] The Specialized AI Software is separate and distinct from other, unaccused, features and functions of Roku and third-party hardware devices and other general computing functions of Roku's devices.

# Roku Voice

Integrate voice features including Direct to Play, voice keyboards, and playback controls

---

> This page applies to publishers who build Roku apps. If you distribute content on The Roku Channel, see the Roku Content Partner Portal.

Roku Voice enables publishers to build voice-enabled apps that empower customers with the convenience of using their voice to launch, access, and control the playback of content. With Roku Voice, publishers can integrate the following features to accelerate content delivery and simplify playback:

- Direct to Play. Launches requested content directly into playback.
- Voice keyboards. Enables customers to say their email address, password, PIN, and method of payment (MOP) when accessing an app.
- Voice-enabled profile selection screens. Enables customers to audibly select which user profile to use when accessing an app.
- Voice controls. Handles voice commands for controlling the playback of content.

*Id.*

135. On information and belief, Roku knew and continues to know that the Specialized AI Software is not a staple article or commodity of commerce suitable for substantial non-infringing use. The Specialized AI Software is especially made and especially adapted for practicing the inventions of the '385 patent because, when activated, it performs the patented methods—namely, receiving natural language utterances, determining intended meaning using short-term and long-term shared knowledge, and generating grammatically or

[19] https://developer.roku.com/dev/docs/voice.

syntactically adapted responses. The Specialized AI Software has no substantial non-infringing uses when considered on its own terms as a separable component because it has no function apart from practicing the patented methods when it is invoked. The fact that the larger products in which the Specialized AI Software is incorporated—such as Roku's TV products—may also be used for unaccused purposes does not establish that the Specialized AI Software itself has substantial non-infringing uses.

136. Roku's infringement has been, and continues to be, knowing, intentional, and willful. On information and belief, Roku has known of the existence of the '385 patent, and its acts of infringement have been and are willful and in disregard for the '385 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

137. Roku's acts of infringement of the '385 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

138. This case is exceptional and, therefore, VoiceBox is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## DEMAND FOR A JURY TRIAL

VoiceBox demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, VoiceBox respectfully requests the Court to enter judgment in favor of VoiceBox and against Roku as to all claims asserted herein as follows:

a. Judgment that Roku has infringed and is infringing, directly and indirectly, literally or by equivalents, the '681 patent, '341 patent, '699 patent, '176 patent, '097 patent, '758 patent, and '385 patent;

b. Judgment that Roku account for and pay damages adequate to compensate

VoiceBox for Roku's infringement of the Asserted VoiceBox Patents, including for any infringing acts not presented at trial and costs, pursuant to 35 U.S.C. § 284;

c. Judgment that Roku has willfully infringed the '681 patent, '341 patent, '699 patent, '176 patent, '097 patent, '758 patent, and '385 patent and an increase in the damages award to VoiceBox of up to three times the amount assessed, pursuant to 35 U.S.C. § 284;

d. That this Court declare this case exceptional and award VoiceBox reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285;

e. That VoiceBox be granted pre-judgment and post-judgment interest on the damages;

f. That VoiceBox be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: October 16, 2026

Respectfully submitted,

Of Counsel:

David Greenbaum
**GREENBAUM LAW LLC**
210 Allison Court
Englewood, NJ 07631
Email: david@greenbaum.law

**FARNAN LLP**

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff VB Assets, LLC*